## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MICHAL FUS,<br><br>    Plaintiff,<br><br>    v.<br><br>CAFEPRESS, INC.,<br><br>    Defendant. | Case No. 1:19-cv-06601<br><br>Honorable Andrea R. Wood |

## DEFENDANT CAFEPRESS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) & 12(b)(6)

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 3

LEGAL STANDARD ........................................................................................................................ 5

LEGAL ARGUMENT ........................................................................................................................ 6

    I.     MR. FUS LACKS ARTICLE III STANDING ........................................................ 6

          A.     Mr. Fus Has Not Suffered An Injury-In-Fact ............................................ 7

          B.     Regardless, Any Of The Harm Mr. Fus Alleges To Have Suffered Is Not Fairly Traceable To CafePress' Conduct ........................................ 8

    II.    MR. FUS FAILS TO PLEAD A VIABLE CLAIM AGAINST CAFEPRESS ............................................................................................................. 9

          A.     The Negligence Claim Must Be Dismissed ............................................ 10

          B.     The Negligence Per Se Claim Must Be Dismissed ................................. 11

          C.     The Illinois Personal Information Protection Act Claim Must Be Dismissed ................................................................................................. 11

          D.     The Illinois Consumer Fraud Act Claim Must Be Dismissed ................ 13

          E.     The Illinois Uniform Deceptive Trade Practices Act Must Be Dismissed ................................................................................................. 14

CONCLUSION ................................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................................6, 14

*Best v. Malec*,
    No. 09 C 7749, 2010 WL 2364412 (N. D. Ill. June 11, 2010) ..............................................11

*Bogner v. Villiger*,
    796 N.E.2d 679 (Ill. App. Ct. 2003) .....................................................................................14

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ..................................................................................................5

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................................................................8

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
    210 F. Supp. 3d 1022 (S.D. Ill. 2016) ..............................................................................10, 13

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
    887 F.3d 803 (7th Cir. 2018) ................................................................................................10

*Cooney v. Chicago Pub. Schs.*,
    943 N.E.2d 23 (Ill. App. Ct. 2010) ...................................................................................9, 10

*Cornielsen v. Infinium Capital Mgmt., LLC*,
    916 F.3d 589 (7th Cir. 2019) ..................................................................................................5

*Davis v. FEC*,
    554 U.S. 724 (2008) ................................................................................................................6

*Engl v. Natural Grocers by Vitamin Cottage, Inc.*,
    15-cv-02129-MSK-NYW, 2016 WL 8578252 (D. Colo. Sept. 21, 2016) ..............................8

*Fox v. Iowa Health Sys.*,
    No. 18-CV-327-JDP, 2019 WL 3349988 (W.D. Wis. July 25, 2019) ..................................12

*FTC v. Sperry & Hutchinson Co.*,
   405 U.S. 233 (1972)................................................................................................................13

*In re Michaels Stores Pin Pad Litig.*,
   830 F. Supp. 2d 518 (N.D. Ill. 2011) ..............................................................................9, 10, 13

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014)........................................................................................5

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   66 F. Supp. 3d 1154 (D. Minn. 2014).........................................................................................9

*In re VTech Data Breach Litig.*,
   No. 15 CV 10889, 2017 WL 2880102 (N.D. Ill. July 5, 2017) ..................................................7

*Jackson v. Loews Hotels, Inc.*,
   No. ED CV 18-827-DMG (JC), 2019 WL 2619656 (C.D. Cal. Jan. 4, 2019)...........................7

*Laurens v. Volvo Cars of N. Am., LLC*,
   868 F.3d 622 (7th Cir. 2017) .....................................................................................................5

*Lewis v. Casey*,
   518 U.S. 343 (1996)...................................................................................................................7

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)................................................................................................................6, 7

*Martis v. Pekin Mem'l Hosp. Inc.*,
   917 N.E.2d 598 (Ill. App. Ct. 2009) ........................................................................................12

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ...................................................................................................4

*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988) .....................................................................................................5

*Neuros Co. v. KTurbo, Inc.*,
   No. 08-cv-5939, 2013 WL 1706368 (N.D. Ill. Apr. 17, 2013)................................................14

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)...................................................................................................................7

*Perry v. Coles Cty., Illinois*,
   906 F.3d 583 (7th Cir. 2018) ...................................................................................................14

*Reid v. Unilever U.S., Inc.*,
 964 F. Supp. 2d 893 (N.D. Ill. 2013) ....................................................................................... 14

*Schilke v. Wachovia Mortg., FSB*,
 820 F. Supp. 2d 825 (N.D. Ill. 2011) ....................................................................................... 12

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016) .............................................................................................................. 6

*Srivastava v. Daniels*,
 409 Fed. App'x 953 (7th Cir. 2011) ......................................................................................... 5

*Steele v. GE Money Bank*,
 No. 08 C 1880, 2009 WL 393860 (N.D. Ill. Feb. 17, 2009) ................................................... 14

*Vanzant v. Hill's Pet Nutrition, Inc.*,
 934 F.3d 730 (7th Cir. 2019) .................................................................................................. 13

# INTRODUCTION

In this putative class action, the plaintiff, Michal Fus, alleges that his sensitive, personal information unlawfully was obtained in connection with a data breach of CafePress, Inc., an online marketplace. Mr. Fus maintains that CafePress had inadequate cybersecurity, and did not provide public notice of the breach in an expedited fashion. As a result, Mr. Fus claims that he suffered a parade of horribles—a lowered credit score, unauthorized access to his financial accounts, and unauthorized credit card charges. He asserts that he remains at risk for future fraud and identity theft. In truth, however, Mr. Fus did not—and never will—suffer any injury arising out of this data breach. He thus has no standing. But even if he had standing, he has no legally cognizable claims. Accordingly, CafePress moves to dismiss this action under Rule 12(b)(1) (for lack of Article III standing) and Rule 12(b)(6) (for failure to state a claim).[1]

## I. MR. FUS HAS NO STANDING

While it is true that CafePress was the unfortunate victim of a cyber-attack, it is equally true that Mr. Fus sustained no injury caused by that incident. The information that was compromised in the data breach consisted largely of customer names, customer mailing addresses, customer e-mail addresses, and customer passwords. Mr. Fus, through his counsel, claims to have made two separate purchases through CafePress: (1) a calendar in 2008; and (2) two customized license plate frames in 2014. With regard to the 2008 purchase, CafePress administratively deleted substantially all information regarding Mr. Fus months before the cyber-attack. With regard to the 2014 purchase, Mr. Fus, a bankruptcy attorney, claims to have used "his law firm credit card" to purchase the license plate frames. That purchase was billed to, and paid for by, an individual named Julie Freydin, who shares a last name with the principal of

---

[1] CafePress presently is investigating whether there is a basis to seek to compel arbitration of Mr. Fus' claims. If the facts support it, CafePress intends to file that motion as soon as possible.

Mr. Fus' then-employer, Law Offices of David Freydin. Counsel for Mr. Fus has confirmed that the subject "credit card was in Julie Freydin's name," and the license plate frames were shipped to Mr. Fus at his former business address, with an email alert sent to his former business email address. In total, the only *personal* information CafePress obtained regarding Mr. Fus in connection with the 2014 purchase was his name, his former business email address, and his former business mailing address—the very same information Mr. Fus includes on every pleading he files in court. It is also the same type of information that appears on the Illinois State Bar website regarding Mr. Fus:

**LAWYER SEARCH: ATTORNEY'S REGISTRATION AND PUBLIC DISCIPLINARY RECORD**

ARDC Individual Attorney Record of Public Registration and Public Disciplinary and Disability Information as of November 19, 2019 at 1:12:22 PM:

| | |
|---|---|
| Full Licensed Name: | Michal Fus |
| Full Former name(s): | None |
| Date of Admission as Lawyer by Illinois Supreme Court: | May 4, 2017 |
| Registered Business Address: | 620 Arlene Dr<br>Wood Dale, IL 60191-1704 |
| Registered Business Phone: | (630) 730-8174 |
| Illinois Registration Status: | Active and authorized to practice law - Last Registered Year: 2019 |
| Malpractice Insurance:<br>(Current as of date of registration; consult attorney for further information) | In annual registration, attorney reported that he/she has malpractice coverage. |

Thus, no sensitive personal or financial information relating to Mr. Fus was, or could have been, compromised in the data breach.

In short, given that the type of information potentially accessed in the cyber-attack was all a matter of public record—*i.e.*, Mr. Fus' contact information—Mr. Fus could not have suffered any harm, let alone an injury-in-fact that is fairly traceable to conduct on CafePress' part. Indeed, the type of information regarding Mr. Fus that was potentially accessed in the attack is not even covered by state data breach notification laws. Because Mr. Fus lacks Article III standing, his case should be dismissed under Rule 12(b)(1).

## II. MR. FUS HAS NO CLAIM

Even assuming, *arguendo*, that Mr. Fus has standing, the claims that he attempts to plead all fail. The negligence and negligence per se claims are barred by the Illinois economic loss rule, as every court in the data breach context has held. Regardless, there is no tort duty to protect personal data, which independently dooms his negligence claim. The data breach notification statute claim is infirm because there is no private right of action under that statute and, regardless, it does not cover the information that was potentially accessed in the breach regarding Mr. Fus. The balance of his statutory claims fail because, among other things, Mr. Fus does not—and cannot—allege facts supporting the essential elements of those claims. Thus, based upon the facts pled, the Court should dismiss this action with prejudice.

## BACKGROUND

In February 2019, CafePress was the victim of a cyber-attack. (Compl., ¶¶ 1, 11, 21, 25.) In that breach, unique e-mail addresses, passwords, names, mailing addresses, credit card numbers, and, in some instances, social security or tax identification numbers, were exfiltrated. (*Id.*) Via website posting, CafePress provided public notice of the attack in September 2019. (*Id.*, ¶ 25.) CafePress then followed up with e-mails to potentially affected customers. (*Id.*, ¶¶ 26-28.) Because his name and contact information were potentially accessed in the attack, one of the individuals to whom CafePress provided e-mail notification was Mr. Fus. (*Id.*)

Mr. Fus alleges that he and the putative class he seeks to represent suffered theft of their "personal information," (*id.*, ¶ 35), which he defines as "all information exposed by the CafePress breach." (*Id.*, ¶ 8 n.1.) He claims that he incurred "costs associated with the detection and prevention of identity theft and unauthorized use of [his] financial accounts," including costs associated with the purchase of credit monitoring and loss of time and productivity in ameliorating consequences of the breach. (*Id.*) He also claims that he suffered "unauthorized

changes" and "loss of use of and access to [his] financial funds" (and costs associated with related inaccessibility of funds). (*Id.*) He even claims that he experienced a lowered credit score resulting from credit inquiries related to fraudulent activities. (*Id.*) And, he maintains that he continues to suffer an "imminent and certainly impending injury flowing from potential fraud and identity theft." (*Id.*) Based on these allegations, Mr. Fus filed suit seeking to represent: (1) a class of similarly-situated individuals nationwide, alleging claims for negligence and negligence per se, and (2) a subclass of Illinois residents, alleging claims under the Illinois Personal Information Protection Act, the Illinois Consumer Fraud Act, and the Illinois Uniform Deceptive Trade Practices Act. (*Id.*, ¶¶ 36-37, 44-85.)

In reality, no sensitive information relating to Mr. Fus was or could have been compromised in the data breach. (Declaration of Cody Martinho ("Martinho Decl."), ¶¶ 3-6.) Substantially all information relating to Mr. Fus' 2008 purchase was deleted by CafePress in 2018, months before the cyber-attack. (*Id.*, ¶ 4.) And, the only *personal* information that CafePress obtained regarding Mr. Fus in connection with the 2014 purchase was his name, his former business mailing address, and his former business e-mail address. (*Id.*, ¶ 5; Declaration of Cary D. Sullivan ("Sullivan Decl."), ¶ 2, Ex. A.) Mr. Fus is an Illinois licensed attorney, practicing bankruptcy law. (*See* Sullivan Decl., Ex. B.) Consequently, every time Mr. Fus files a pleading in court, or passes out a business card, he discloses the very same information that potentially was compromised in the cyber-attack. The same type of information is publicly disclosed on the website of the State Bar of Illinois. (*Id.*)[2]

---

[2] CafePress requests that the Court take judicial notice of Exhibit B to the Sullivan Decl. on the ground that its contents are "capable of accurate and ready determination from [a] source[] whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201; *see also Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006).

No sensitive, personal or financial information relating to Mr. Fus, like a personal credit card number, a social security number, or a tax identification number, could have been compromised in the cyber-attack. (Martinho Decl., ¶ 6; Sullivan Decl., ¶ 2, Ex. A.) Consequently, no such information was accessed in the breach. (*See id*.) Although under no legal obligation to do so, CafePress provided e-mail notification to Mr. Fus in an effort to be as inclusive and transparent as possible. (Martinho Decl., ¶ 7.)

## LEGAL STANDARD

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). In considering a motion under Rule 12(b)(1), a court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Where, as here, "a defendant raises a factual challenge to standing, the plaintiff bears the burden of proving standing by a preponderance of the evidence." *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 625 (7th Cir. 2017).

Even if a plaintiff can establish standing, a complaint must be dismissed under Rule 12(b)(6) where a plaintiff fails to allege facts which, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The pleadings must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Srivastava v. Daniels*, 409 Fed. App'x 953, 955 (7th Cir. 2011) ("Dismissal of a complaint is appropriate [under *Twombly*] if the factual detail . . . [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." (internal quotation marks

omitted) (internal citation omitted)). This "pleading standard is particularly demanding in 'complex, large-scale' data breach class action litigation." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 972 (S.D. Cal. 2014).

Rule 9(b), which applies to claims involving allegations of fraud, requires parties alleging fraud "to state with particularity the circumstances constituting fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting Fed. R. Civ. P. 9(b)). That is, "the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Id.* (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)). Dismissal with prejudice is appropriate if the plaintiff fails to propose "how [he] might be able to amend [his] pleading to cure the deficiencies contained in the complaint." *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 604 (7th Cir. 2019) (citing *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 808 (7th Cir. 2010)).

## LEGAL ARGUMENT

This Court lacks subject-matter jurisdiction to adjudicate the claims in this case because Mr. Fus has not suffered an injury-in-fact, much less one that is fairly traceable to conduct on the part of CafePress. Mr. Fus also fails to allege facts sufficient to state a claim against CafePress. As a result, the complaint should be dismissed.

I.      **MR. FUS LACKS ARTICLE III STANDING**

Under Article III of the Constitution, the judicial power of the United States, vested in the federal courts, extends only to "Cases" and "Controversies." U.S. Const. art. III, §§ 1-2. Because the Constitution does not precisely define the reach of this judicial power, courts have developed the doctrine of standing. While some aspects of standing doctrine are "merely prudential considerations," it also contains a "core component," the case-or-controversy requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To prevent "federal courts

[from] exceed[ing] their authority," the law of Article III standing "confines the federal courts to a properly judicial role" by "limit[ing] the category of litigants empowered to maintain a lawsuit in federal court." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).

This "irreducible constitutional minimum" has three requirements. *Lujan*, 504 U.S. at 560-61. First, the plaintiff must have suffered a concrete and particularized injury-in-fact, which must be actual or imminent, rather than speculative. Second, the injury must be fairly traceable to the defendant's alleged conduct. Third, the injury must be likely redressable by a favorable decision by the court. *Id*. These threshold requirements must be met for each claim the plaintiff brings, and for each remedy sought. *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Moreover, these requirements apply with equal force to class actions as they do to individual litigants. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). If no class representative can establish standing, they may not seek relief in federal court, either for themselves or on behalf of a class. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). As the party invoking federal jurisdiction, Mr. Fus "bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. As demonstrated below, he cannot do so.

### A. Mr. Fus Has Not Suffered An Injury-In-Fact

With respect to the 2008 purchase, the evidence establishes that CafePress had deleted substantially all information relating to Mr. Fus in 2018, months before the cyber-attack. (Martinho Decl., ¶ 4.) With respect to the 2014 purchase, the evidence establishes that the only *personal* information that Mr. Fus provided to CafePress was his former business contact information. (*Id*., ¶ 5.) The credit card used for that purchase belonged to "his law firm" and was in the name of "Julie Freydin." (*Id*.; Sullivan Decl., ¶ 2, Ex. A.) Mr. Fus' former business contact information—his former work e-mail address and mailing address—is the same type of information that is publicly disclosed every time Mr. Fus appears in court or passes out a

business card. Thus, even before the cyber-attack on CafePress, all of the information potentially compromised concerning Mr. Fus already was in the public domain.

As courts have recognized, the acquisition of *public* information in a data breach is not an injury-in-fact giving rise to Article III standing. *See*, *e.g.*, *Jackson v. Loews Hotels, Inc.*, No. ED CV 18-827-DMG (JC), 2019 WL 2619656, at *3 (C.D. Cal. Jan. 4, 2019) (holding that the theft of plaintiff's "full name, email, phone number, and address" could not give rise to an injury-in-fact "because that information was already generally publicly available"); *In re VTech Data Breach Litig.*, No. 15 CV 10889, 2017 WL 2880102, at *4 (N.D. Ill. July 5, 2017) (same). Indeed, the acquisition of a person's name, e-mail address, and mailing address, without more, does not even give rise to a duty to provide notice under state data breach notification laws. *See*, *e.g.*, 815 Ill. Comp. Stat. 530/5 and 530/10. To put a finer point on it, the Illinois legislature, like all other state legislatures, does not believe that there is even a risk of harm requiring notice where the only information accessed in an attack is a person's name, mailing address, and e-mail address. The complaint, therefore, should be dismissed for lack of injury-in-fact.

### B.  Regardless, Any Of The Harm Mr. Fus Alleges To Have Suffered Is Not Fairly Traceable To CafePress' Conduct

Mr. Fus claims that he suffered a lowered credit score, unauthorized access to his financial accounts, unauthorized credit card charges, and maintains that he remains at risk for future identity theft and fraud. As implausible as those allegations are, even assuming, *arguendo*, that Mr. Fus suffered such injuries, in order to have standing, Mr. Fus must causally connect those alleged injuries to CafePress' conduct. Given the limited information that was potentially compromised in the attack regarding Mr. Fus, he cannot make that connection.

Under similar facts, the district court in *Engl v. Natural Grocers by Vitamin Cottage, Inc.*, 15-cv-02129-MSK-NYW, 2016 WL 8578252 (D. Colo. Sept. 21, 2016), rejected causation

in dismissing the action for lack of standing. "[P]eoples' names, in and of themselves, are not generally understood to expose such individuals to a concrete risk of identity theft." *Id.* at *6. While the plaintiff alleged damages in the form of time and effort spent closing financial accounts, the court concluded that such time and effort could not reasonably be attributed to the conduct of the defendant given that only the plaintiff's name and a different (and canceled) credit card number were stolen. *Id.* at *7. So too here, Mr. Fus could not possibly have suffered a lowered credit score, unauthorized access to his financial accounts, and unauthorized credit card charges by virtue of access to his name, former business mailing address, and former business e-mail address (from the 2014 transaction), or his personal email address (from the 2008 transaction). Nor is Mr. Fus at risk of "certainly impending" future harm by virtue of access to such information. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013) ("[W]e have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that [a]llegations of possible future injury are not sufficient.") (internal quotations omitted). Because none of Mr. Fus' alleged injuries is fairly traceable to conduct on the part of CafePress, he lacks Article III standing for this independent reason.

## II.     MR. FUS FAILS TO PLEAD A VIABLE CLAIM AGAINST CAFEPRESS

Even if Mr. Fus could overcome the foregoing jurisdictional hurdles, he fails to state viable causes of action.

### A.     The Negligence Claim Must Be Dismissed

The Court should dismiss the negligence claim because Mr. Fus alleges that he suffered only economic losses. (Compl., ¶¶ 35, 51.) As a matter of law, the negligence claim is thus barred by the economic loss rule. *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528 (N.D. Ill. 2011) (data breach class action holding that Illinois' economic loss rule "bars a plaintiff from recovering for purely economic losses under a tort theory of negligence"); *In re*

*Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1174 (D. Minn. 2014) (same); *In re SuperValu, Inc., Customer Data Security Breach Litigation*, Court File No. 14–MD–2586 ADM/TNL, 2018 WL 1189327, at *13-14 (D. Minn. March 7, 2018) ("[Plaintiff] does not allege injury to his person or property as a result of the breach. Thus, his alleged losses are purely economic, and the economic loss doctrine is a further bar to his negligence claim.").

More fundamentally, CafePress did not owe Mr. Fus any tort duty—an essential element of his claim. *See Cooney v. Chicago Pub. Schs.*, 943 N.E.2d 23, 29 (Ill. App. Ct. 2010) ("Absent a duty, there is no negligence."). "The existence of a duty under Illinois law is a question of law." *SuperValu*, 2018 WL 1189327, at *14 (quoting *USAA Fed'l Savings Bank v. PLS Fin'l Servs., Inc.*, 260 F. Supp. 3d 965, 969 (N.D. Ill. 2017) (citation omitted)). "Although the Illinois Supreme Court has not opined on the issue, the Illinois Appellate Court has refused to create 'a new legal duty beyond legislative requirements' to safeguard an individual's personal information or protect it from disclosure." *Id*. (citing *USAA*, 260 F. Supp. 3d at 969 (quoting *Cooney*, 943 N.E.2d at 28-29)). "Federal courts interpreting Illinois law have consistently declined to impose a common law duty to safeguard personal information in data security cases." *SuperValu*, 2018 WL 1189327, at *14 (citing *Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, No. 16-7619, 2016 WL 7409916, at *3 (N.D. Ill. Dec. 22, 2016) (listing cases). The Seventh Circuit has followed suit. *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 816 (7th Cir. 2018) (rejecting the existence of a common law duty to safeguard customer data). This Court should do the same.

B.    **The Negligence Per Se Claim Must Be Dismissed**

The negligence per se claim suffers a similar fate: It is conclusively barred by the economic loss rule. *Michaels Stores*, 830 F. Supp. 2d at 530. Even if it were not barred, the alleged tort duty underlying the claim—an alleged violation of the FTC Act—cannot support a

negligence per se claim. *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 210 F. Supp. 3d 1022, 1041 (S.D. Ill. 2016) (rejecting claim that the FTC Act can give rise to a duty underlying a negligence claim); *SuperValu*, 925 F.3d at 963 (noting that courts have rejected "the proposition that the FTC Act creates a duty enforceable through an Illinois negligence action"). This holding makes perfect sense. There is no private right of action under the FTC Act, and FTC has been vested with exclusive authority to enforce the Act. *SuperValu, Inc.*, 925 F.3d at 963. Allowing the FTC Act to support a negligence claim would create an end-run around the FTC's exclusive enforcement right. *Id*.; *see also Cmty. Bank*, 210 F. Supp. 3d at 1041. The negligence per se claim thus fails as a matter of law.

C. **The Illinois Personal Information Protection Act Claim Must Be Dismissed**

The reasons why Mr. Fus' claim under the Illinois Personal Information Protection Act (PIPA) must be dismissed with prejudice do not require elaborate discussion. First, there is no private right of action under the PIPA. *Best v. Malec*, No. 09 C 7749, 2010 WL 2364412, at *7 (N. D. Ill. June 11, 2010). Second, the information that was potentially compromised in the attack regarding Mr. Fus does not qualify as "Personal information." *See* 815 Ill. Comp. Stat. 530/5. The Act specifically carves out public information from the definition: "'Personal information' does not include publicly available information that is lawfully made available to the general public from federal, State, or local government records." *Id*. In addition to that carve out, notice is required only where there has been unlawful acquisition of an "individual's first name or first initial and last name *in combination with any one or more of the following data elements* . . . (A) Social Security number. (B) Driver's license number or State identification card number. (C) Account number or credit or debit card[.] (D) Medical information. (E) Health insurance information. (F) Unique biometric data generated from measurements or technical analysis of human body characteristics[.]" *Id*. (emphasis added). Alternatively, notice

is required where "[u]ser name or email address, *in combination with* a password or security question and answer that would permit access to an online account[.]" *Id*. (emphasis added.) None of the "in combination with" data elements is present with regard to Mr. Fus. He thus has no PIPA claim.

While the PIPA may be enforced under the Illinois Consumer Fraud Act (ICFA), *see SuperValu*, 925 F. 3d at 964; *see also Best v. Malec*, No. 09 C 7749, 2010 WL 2364412, at *7 (N.D. Ill. June 11, 2010) ("The only provision for a private right of action under the PIPA is pursuant to the ICFA."), that avenue is foreclosed to Mr. Fus. To begin, none of his "Personal information" was wrongly acquired in the attack and, hence, there is no violation of the PIPA to enforce. Regardless, in order to state a claim, Mr. Fus must establish that the *delay in providing notice* caused him pecuniary harm, separate and distinct from any harm caused by the intrusion itself. *See SuperValu*, 2018 WL 1189327, at *16; *Fox v. Iowa Health Sys.*, No. 18-CV-327-JDP, 2019 WL 3349988, at *13 (W.D. Wis. July 25, 2019) (rejecting PIPA claim asserted under ICFA where plaintiff "failed to allege any damages that were caused by the timing of the notifications"). Yet, the damages that Mr. Fus allegedly suffered are limited to those arising from the breach itself, *see* Compl., ¶¶ 4, 8, 35, 65, not from CafePress' supposed delay in providing him notice. Mr. Fus' prayer for injunctive relief fails for the same reason. *See Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 838 n.5 (N.D. Ill. 2011) ("It is well established under Illinois law that private rights of action for injunctive relief under the ICFA require damages."). The Court therefore should dismiss the PIPA claim with prejudice.

D.     **The Illinois Consumer Fraud Act Claim Must Be Dismissed**

To state a claim under the ICFA, a plaintiff must allege that (1) the defendant engaged in a deceptive or unfair practice, (2) the defendant intended for the plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff

sustained actual damages, and (5) such damages were proximately caused by the defendant's deception. *Martis v. Pekin Mem'l Hosp. Inc.*, 917 N.E.2d 598, 603 (Ill. App. Ct. 2009). Mr. Fus alleges the following grounds for his claim: (1) a failure to implement and maintain reasonable security and privacy measures; (2) misrepresenting the protections that would be in place to safeguard Mr. Fus' personal information; and (3) concealing that there was not adequate data security. (Compl., ¶ 71.) As demonstrated below, none has merit.

Overall, the claim fails because Mr. Fus does not allege either an unfair or a deceptive practice. With respect to the deceptive practice prong, Mr. Fus fails to allege that he had any communications with CafePress, which is necessary to state a claim. *Michaels*, 830 F. Supp. 2d at 525 (noting that the Illinois Supreme Court has declared that a plaintiff "cannot maintain an action under the ICFA for a deceptive practice absent some communication from the defendant, either a communication containing a deceptive misrepresentation or a deceptive omission") (citing *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009)). Further, Mr. Fus does not allege the content of any misrepresentation on CafePress' part—failing to satisfy Rule 9(b), which applies to this claim. *Cmty. Bank*, 210 F. Supp. 3d at 1030 (citing *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683-84 (7th Cir. 1992)); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738-39 (7th Cir. 2019) (requiring facts of "who, what, when, where, and how"). Nor does he allege that he read or heard any misrepresentations. He also does not allege when the alleged misrepresentations were made. Nor does he allege that he relied upon them to his detriment. In short, "[t]he complete lack of information about the timing, place, or manner of communicating alleged misrepresentations" renders Mr. Fus' claim fatally deficient. *See Cmty. Bank*, 210 F. Supp. 3d at 1030 (citing *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 870 (7th Cir. 2013)); s*ee also Vanzant*, 934 F.3d at 738-39 (same).

Likewise, Mr. Fus fails to adequately plead that CafePress engaged in an unfair practice. "To determine whether a practice is unfair under the ICFA, the court considers whether the practice offends public policy, whether it is immoral, unethical oppressive, or unscrupulous, and whether it causes substantial injury to consumers." *Michaels*, 830 F. Supp. 2d at 525; *see also FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244, n.5 (1972). Here, apart from a conclusory assertion that CafePress' conduct was "immoral, unethical, oppressive, and unscrupulous," Mr. Fus does not plead any *facts* establishing an unfair practice under the ICFA. *See Twombly*, 550 U.S. at 545 ("[A] formulaic recitation of a cause of action's elements will not do."). Thus, Mr. Fus does not satisfy the pleading standards under *Twombly*, and the claim fails.

### E. The Illinois Uniform Deceptive Trade Practices Act Must Be Dismissed

The UDTPA claim fails for the most basic of reasons: Injunctive relief is the only remedy available under the UDTPA, and Mr. Fus does not adequately plead an entitlement to equitable relief. 815 Ill. Comp. Stat. Ann. § 510/3. Mr. Fus fails to identify the type of injunctive relief he seeks. Regardless, to obtain an injunction, a party "must prove" that "no adequate remedy at law exists." *Bogner v. Villiger*, 796 N.E.2d 679, 685-86 (Ill. App. Ct. 2003); *Neuros Co. v. KTurbo, Inc.*, No. 08-cv-5939, 2013 WL 1706368, at *3 (N.D. Ill. Apr. 17, 2013) (holding as much under the UDTPA). Yet here, Mr. Fus seeks *damages* under a bevy of other laws and statutes, precluding his UDTPA claim. *See Steele v. GE Money Bank*, No. 08 C 1880, 2009 WL 393860, at *10 (N.D. Ill. Feb. 17, 2009); *see also Perry v. Coles Cty., Illinois*, 906 F.3d 583, 590 (7th Cir. 2018) ("And because an adequate remedy at law is not lacking, plaintiffs are not entitled to equitable relief.").

Further, because injunctive relief is the only available remedy, to maintain an action under the UDTPA, "a consumer must allege facts which would indicate that he is likely to be damaged in the future." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 918 (N.D. Ill. 2013).

Mr. Fus does not allege any facts demonstrating a likelihood of a future data breach, dooming the claim. *See SuperValu*, 2018 WL 1189327, at *15 ("Even allowing [plaintiff] the benefit of all reasonable inferences, the occurrence of two data breaches in a three month period and none in the three and a half years since suggests merely a possibility of a future data breach, not a likelihood of a future data breach. Because [plaintiff] does not plausibly allege that he is likely to be damaged in the future, he cannot state a claim under the UDTPA."). Moreover, because the only information regarding Mr. Fus that could have been compromised in the breach is public information, Mr. Fus cannot, consistent with Rule 11, ever allege facts to support this claim. The UDTPA claim should be dismissed with prejudice.

## CONCLUSION

Mr. Fus has suffered no injury, and his claims have no merit. Accordingly, for the reasons above, the Court should dismiss this action for lack of subject matter jurisdiction or, in the alternative, dismiss each of the claims with prejudice.

Dated this 4th day of December, 2019.    Respectfully submitted,

By: /s/ *John A. Vogt*

JONES DAY

John A. Vogt (admitted *pro hac vice*)
javogt@jonesday.com
Cary D. Sullivan (admitted *pro hac vice*)
carysullivan@jonesday.com
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone: +1.949.851.3939

Adam W. Wiers
awwiers@jonesday.com
77 West Wacker, Suite 3500
Chicago, IL 60601.1692
Telephone: +1.312.782.3939

*Counsel for Defendant CafePress, Inc.*